**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

---

|  |  |  |
|---|---|---|
| MARTIN L. ROGERS, | : | **Hon. Joseph A. Greenaway, Jr.** |
|  | : |  |
| Petitioner, | : | Civil Action No. 08-3673 (JAG) |
|  | : |  |
| v. | : |  |
|  | : |  |
| BRUCE A. HAUCK, et al., | : | **O P I N I O N** |
|  | : |  |
| Respondents. | : |  |

---

**APPEARANCES**:

> MARTIN L. ROGERS, #473602B
> Northern State Prison
> P.O. Box 2300
> Newark, New Jersey 07114
> Petitioner <u>Pro Se</u>

> BARBARA A. ROSENKRANS, Assistant Prosecutor
> PAULA T. DOW, ESSEX COUNTY PROSECUTOR
> Essex County Veterans Courthouse
> Newark, New Jersey 07102
> Attorneys for Respondents

**GREENAWAY, JR.**, District Judge

Martin L. Rogers ("Petitioner") filed a Petition and an Amended Petition for a Writ of

Habeas Corpus, pursuant to 28 U.S.C. § 2254, challenging judgments of conviction entered in

the Superior Court of New Jersey, Essex County, April 7, 2000, and amended as to the sentence

on October 17, 2002.  The judgments of conviction were entered after a jury found Petitioner

guilty of first degree armed robbery of a gasoline station and a number of related crimes.

Respondents filed an Answer seeking dismissal of the Petition on the merits and Petitioner filed a

Reply.  For the reasons expressed below, this Court will dismiss the Petition, with prejudice, and deny a certificate of appealability.

## I.  BACKGROUND

This case involves three judgments of conviction, each entered on April 7, 2000, against Petitioner in the Superior Court of New Jersey, Law Division, Essex County.  A jury found Petitioner guilty of first degree armed robbery, two weapons offenses, second degree eluding a police officer, a lesser-included offense of fourth degree aggravated assault on a police officer, a disorderly persons offense of resisting arrest, and terroristic threats against a police officer.  In a separate deliberation, the jury found Petitioner guilty of possession of a weapon by a convicted felon.  Petitioner also pled guilty to a separate indictment charging him with receiving stolen property.

The Law Division granted the state's motion for an extended term and sentenced Petitioner to an aggregate 50-year term, including the 85% parole ineligibility provision of New Jersey's No Early Release Act ("NERA") and the 25-year parole ineligibility term under the Graves Act.  Petitioner appealed.

In an opinion filed May 14, 2002, the New Jersey Superior Court, Appellate Division, affirmed the convictions and remanded for re-sentencing.  See State v. Rogers, Docket No. A-5844-99T4 slip op. (N.J. Super. Ct., App. Div., May 14, 2002).  The New Jersey Supreme Court denied certification regarding the convictions on July 16, 2002.  See State v. Rogers, 174 N.J. 194 (2002) (table).

On October 17, 2002, the Law Division re-sentenced Petitioner to an aggregate 44-year term of imprisonment, with 22 years of parole ineligibility, pursuant to the Graves Act, N.J.

2

STAT. ANN. § 2C:43-6c.  Petitioner appealed the re-sentencing, and by order filed March 4, 2004, the Appellate Division affirmed, finding that the sentence is not manifestly excessive or unduly punitive and does not constitute an abuse of discretion.  See State v. Rogers, Docket No. A-1940-02T4 order (N.J. Super. Ct., App. Div., Mar. 4, 2004).  On June 30, 2004, the New Jersey Supreme Court affirmed the re-sentencing order.  See State v. Rogers, 180 N.J. 456 (2004) (table).

On September 1, 2002, Petitioner filed a petition for post-conviction relief in the Law Division.  The Law Division denied post-conviction relief by order and accompanying opinion filed August 11, 2006.  Although Petitioner asked the New Jersey Public Defender's Office to appeal the order denying post-conviction relief, the information provided to this Court indicates that, while no appeal has been filed, the Intake Unit of the Public Defender's Office is preparing to do so.

The Appellate Division summarized the facts leading to Petitioner's convictions as follows:

> The events that led to defendant's indictment, trial and conviction occurred at approximately 9:00 P.M., on May 23, 1999, when a man with a gun accosted David Edwards while Edwards was working at a service station in Irvington.  The man pointed the gun at Edwards, demanded "the money," and grabbed Edwards by his uniform.  He took money from Edwards and left the scene in what Edwards described as, "a big brown car, you know. One of those old-fashion, you know."  Edwards telephoned the police and when they arrived, Edwards indicated the direction in which the robber had driven and also gave a general description of the car.  He described the robber as being around five feet tall and well built, and also generally described his clothing.  He said further that the man had a "shiny object" in his waistband.
>
> Based on Edwards' information, the police drove in the general direction he indicated, and soon saw a vehicle which they

3

concluded met the description that Edwards had provided. They began following the vehicle, which at first seemed as though it were trying to escape, but then stopped. Defendant, who was in the vehicle, then told the police he had not done anything, but when the police attempted to speak to him, he "stepped on the gas and took off." The police again pursued, and during the chase, the defendant tossed something from the car. The police recovered the object which turned out to be a gun. Eventually, the police caught up to the vehicle, stopped it, engaged in a wrestling match with defendant and finally arrested him. They described him as violent, kicking and flailing in an attempt to avoid arrest and said they subdued him only after spraying him with mace.

Edwards was apparently not asked to identify defendant directly. However, Edwards did identify the recovered gun as the one that was pointed at him, and, as additional corroboration for identification, the police testified that defendant had a C-clamp on his belt, which apparently was the shiny object referred to by Edwards. The police also described defendant's threats to kill them, made while they were processing his arrest.

State v. Rogers, Docket No. A-5844-99T4 slip op. at pp. 2-3 (N.J. Super. Ct., App. Div., May 14, 2002).

Petitioner executed his original § 2254 Petition on July 15, 2008. The Clerk received it on July 23, 2008. In response to this Court's Mason order, see Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000), Petitioner elected to withdraw the Petition. Consequently, this Court dismissed the Petition on September 30, 2008, without prejudice to the filing of his all-inclusive petition. On October 16, 2008, the Clerk received from Petitioner an all-inclusive Petition ("Amended Petition"), which Petitioner signed on July 21, 2008, with the notation "Amended for All-Inclusive." The Amended Petition raises the following grounds:

Ground One, Part A: PETITIONER HAS BEEN DEPRIVED OF HIS DUE PROCESS RIGHTS TO A SPEEDY APPEAL UNDER THE UNITED STATES CONSTITUTION AND RELEVANT CONTROLLING LAW.

4

Supporting Facts:   Because petitioner filed his initial petition for
Post-[C]onviction-Relief in a timely manner in September, 2002;
again in August, 2004; and a third time in March, 2005, and the
Trial Court has yet to hear his petition, there is an absence of
available state corrective process, and circumstances exist that has
[sic] deprived petitioner of his rights.  Petitioner has diligently
reached out to his appointed counsel of The Public Defenders
Office, and the court on numerous occasions.  His Post-Conviction
Appeal has still been "Inordinately Delayed."

Ground One, Part B:   POST-CONVICTION-RELIEF COUNSEL
INORDINATELY DELAYED PETITIONER'S APPEAL IN
RAISING NEW CONSTITUTIONAL CLAIMS, THUS
DEPRIVING PETITIONER OF HIS RIGHT TO EFFECTIVE
ASSISTANCE OF COUNSEL.

Supporting Facts:   After a few attempts at filing his petition for
Post-Conviction-Relief, and after a few years of waiting for
counsel to be appointed, in January, 2006, petitioner finally
received assigned counsel.  In February, 2006, petitioner received a
letter from his assigned counsel.  After consulting with her,
petitioner was told that a hearing would soon be held on his new
constitutional claims.  Over a span[] of more than 2 1/2 years,
despite petitioner's numerous letters to counsel and the Office of
the Public Defender, no hearing has been held, and PCR counsel
has not been responsive.  Petitioner's claims has [sic] yet to be
heard in the trial court, and to date petitioner is unaware as to the
status of his case.

Ground Two:   THE PROSECUTOR COMMITTED
MISCONDUCT IN HER SUMMATION, THEREBY
DEPRIVING THE DEFENDANT OF A FAIR TRIAL.

Supporting Facts:   In her summation, the prosecutor committed
misconduct by making ongoing statements to the jury in reference
to a brown 1984 Chevy.  She also stated that "It was next to
impossible" that the brown Chevy was not the automobile that fled
the scene of a crime.  There is no indication in the record that the
suspect's car was a 1984 model.  Secondly, the prosecutor
bolstered the credibility of the police officers by stating, among
other things, "He wasn't an overzealous police officer."  "He didn't
pull his gun.  He didn't attempt to shoot the perpetrator . . ."  An
objection, soon after, was sustained for the defense.  However, the

jury had already retrieved her convincing words, and subsequently returned a verdict in favor of the state.

Ground Three:   BECAUSE THE EVIDENCE WAS INSUFFICIENT TO SUPPORT DEFENDANT'S CONVICTION FOR ROBBERY, THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION FOR A JUDGMENT OF ACQUITTAL.

Supporting Facts:   Because the victim did not identify the petitioner as the robber, and because his description of the robber did not match the defendant, and because the victim did not know the type of car or the make/model, clearly the evidence presented was insufficient to find petitioner guilty of robbery.

Ground Four:   THE JUDGE'S CHARGE ON FLIGHT WAS ERRONEOUS AND DEPRIVED DEFENDANT OF A FAIR TRIAL.

Supporting Facts:   Because there were three stages in the state's narrative where the jury could have found "flight" and because the judge didn't explain the defense position with sufficient clarity: that the petitioner only fle[]d from police officers on foot after witnessing a car chase, and that he solely ran to evade apprehension for outstanding municipalities, and because there must be circumstances present and unexplained which, in connection with the leaving, the "Flight Charge" permitted the jury to make an undifferentiated inference of "consciousness of guilt," that resulted in a verdict for the state.

Ground Five:   THE PETITIONER'S SENTENCE IS ILLEGAL IN PART, EXCESSIVE AND UNCONSTITUTIONAL.

Supporting Facts:   Because the state's expert testified that he "cannot make this weapon [the gun] readily operable without dismantling it entirely and reassembling it with new parts," the petitioner was wrongfully sentenced under the "Graves Act."  The gun doesn't require a mere minor adjustment, but must be completely taken apart and repaired.  The weapon did not possess "sufficient force" to fire or injure a person, and the "Graves Act" does not apply if the object involved is so seriously broken or incomplete that it can no longer be considered a real gun.

Ground Six:   IN DETERMINING THE BASE TERM, THE
COURT DID NOT FOCUS ON THE PRESENT OFFENCE [sic],
BUT LOOKED TO HIS PRIOR OFFENSES AND THE NEED
TO PROTECT THE PUBLIC.

Supporting Facts:   The court characterized this offense as an
ordinary robbery.  Though the court doesn't specify which
aggravating and mitigating factors it found, it did state that these
factors were in "Equipoise."  In light of the court's assessment of
the present crime, the sentence of 44 years with a 22 year parole
bar is excessive.

Ground Seven:   TRIAL COUNSEL'S FAILURE TO MOVE TO
SUPPRESS EVIDENCE CONCERNING THE
IDENTIFICATION OF THE FIREARM BY EDWARDS
DEPRIVED PETITIONER OF HIS RIGHT TO EFFECTIVE
ASSISTANCE OF COUNSEL UNDER BOTH THE U.S. AND
STATE CONSTITUTIONS.

Supporting Facts:   The victim, David Edward, identified a firearm
displayed to him by the police.  The procedures employed by the
officer to elicit such identification was impermissibly suggestive as
to give rise to a substantial likelihood of misidentification.  After
Edwards arrived at the police precinct to identify a weapon
allegedly wielded at him during a robbery, the police then informed
Edwards of the circumstances concerning a motor vehicle pursuit
which led to the recovery of a firearm and defendant's arrest.
Edwards was not displayed any other firearm other than the one
exhibited by the officer.  Trial counsel's failure to move to have
such identification evidence suppressed, deprived petitioner of his
right to effective assistance of counsel.

Ground Eight:   APPELLATE COUNSEL'S FAILURE TO
CHALLENGE THE PROPRIETY OF THE TRIAL COURT'S
COMMENTS TO THE JURY DURING DELIBERATIONS
DEPRIVED PETITIONER OF HIS RIGHT TO EFFECTIVE
ASSISTANCE OF COUNSEL UNDER THE CONSTITUTION.

Supporting Facts: During jury deliberations, the trial court received
a note from the jury requesting - among other things - whether
petitioner was the owner of the vehicle pursued by the officer.
With regards to this inquiry, defence [sic] counsel, the prosecution
and the court discussed, outside the presence of the jury, the
appropriate way to answer these questions.  Despite of [sic] trial

counsel's objection, and expressing concern, the trial court not only allowed a read back of - inflammatory - testimony by the officer which was previously objected to, but the trial court also commented to the jury: "I'm not sure what relevance, if any, the owners of the vehicle may be in your deliberations.  And I do not want you to disclose any information about your deliberation process.  But the only evidence of ownership of the vehicle is contained in . . . the tow sheet."  Appellate counsel's failure to challenge the propriety of the trial court's comments deprived petitioner of his right to effective assistance of counsel under both the United States and New Jersey constitutions.

Ground Nine:   PETITIONER'S EXTENDED TERM SENTENCE IS ILLEGAL AND DISPROPORTIONATE TO CRIMINALS WITH LIKE CRIMES.

Supporting Facts:   A.  Because the trial court found a fact "Protection of the Public" and increased petitioner's sentence, and because this fact was not submitted to a jury and proven beyond a reasonable doubt, petitioner's extended term sentence is illegal.

B.  Petitioner's sentence is disproportionate to criminals with like crimes under the "No Early Release Act" (NERA) 85% Law, any offender that possesses a "Deadly Weapon" during the commission of a crime is subject to 85% of his "Ordinary Maximum;" which is 17 years, 85% of 20 years for a first degree crime.  In petitioner's case, he was found to have possessed an "Inoperable Gun" in which the 85% Law was held to not apply.  But because petitioner possessed a less dangerous - Inoperable Gun - than more violent offenders with deadly weapons, he received five-years more time on his parole ineligibility term than criminals with like crimes. Petitioner submits that his sentence violates Due process and his right to "Equal Protection Under the Laws."

(Am. Pet., ¶ 12, Grounds One-Nine) (Docket entry #7.)

8

Respondents filed an Answer, arguing that the Petition should be denied on the merits.[1]

Petitioner filed a Reply in response to the Answer.

## II.  STANDARD OF REVIEW

Section 2254(a) of Title 28 of the United States Code gives the court jurisdiction to

entertain a habeas petition challenging a state conviction or sentence only where the inmate's

custody violates federal law:

> [A] district court shall entertain an application for a writ of habeas
> corpus in behalf of a person in custody pursuant to the judgment of
> a State court only on the ground that he is in custody in violation of
> the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. §

2254(d), limits a federal court's authority to grant habeas relief when a state court has

adjudicated petitioner's federal claim on the merits.  See 28 U.S.C. § 2254(d).  Where a federal

claim was "adjudicated on the merits" in state court proceedings, the writ must be denied unless

adjudication of the claim either involved an unreasonable application of clearly established

federal law, or was based on unreasonable determination of the facts in light of the evidence

before the state court.  See 28 U.S.C. § 2254(d).  Specifically, § 2254(d) provides:

---

[1] Respondents do not argue that the Amended Petition should be dismissed because Petitioner failed to exhaust his two ineffective assistance of counsel grounds before the Appellate Division and the New Jersey Supreme Court.  To the extent that Petitioner's claims are unexhausted and/or procedurally defaulted, this Court will deny them on the merits pursuant to 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State").  See Taylor v. Horn, 504 F.3d 416, 427 (3d Cir. 2007); Bronshtein v. Horn, 404 F.3d 700, 728 (3d Cir. 2005) ("We would permit Bronshtein to attempt on remand to establish a reason to excuse his procedural default, but we find it unnecessary to do so because it is apparent that the claims in question lack merit.  Under 28 U.S.C. § 2254(b)(2), we may reject claims on the merits even though they were not properly exhausted, and we take that approach here.").

(d) An application for a writ of habeas corpus . . . shall not be granted with respect to any claim that was adjudicated on the merits in State Court proceedings unless the adjudication of the claim -

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The unreasonableness standards of § 2254(d) govern only claims that were "adjudicated on the merits in State Court proceedings."  28 U.S.C. § 2254(d).  "An 'adjudication on the merits' has a well settled meaning: a decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground."  Rompilla v. Horn, 355 F.3d 233, 247 (3d Cir. 2004) (citations and internal quotation marks omitted), reversed on other grounds sub nom. Rompilla v. Beard, 545 U.S. 374 (2005); see also Rolan v. Vaughn, 445 F.3d 671, 678 (3d Cir. 2006).  A state court may render an adjudication on the merits of a federal claim by rejecting the claim without any discussion whatsoever.  See Rompilla, 355 F.3d at 247.  On the other hand, "[i]f the petitioner's legal claims were presented but not addressed by the state courts, 28 U.S.C. § 2254(d) does not apply, and federal courts undertake a de novo review of the claim."  Rolan, 445 F.3d at 678.

As the New Jersey courts adjudicated Petitioner's claims on the merits, this Court may not grant relief unless either § 2254(d)(1) or § 2254(d)(2) is satisfied.  See 28 U.S.C. § 2254(d).  Accordingly, this Court may not grant habeas relief to Petitioner unless the adjudication of a federal claim by the New Jersey courts involved an unreasonable application of clearly

10

established Supreme Court law, see 28 U.S.C. § 2254(d)(1), or was based on an unreasonable

determination of the facts in light of the evidence presented in the state court proceeding and

petitioner is in custody in violation of the Constitution or laws or treaties of the United States,

see 28 U.S.C. §§ 2254(a), (d)(2).

A court begins the analysis under § 2254(d)(1) by determining the relevant law clearly

established by the Supreme Court.  See Yarborough v. Alvarado, 541 U.S. 652, 660 (2004).

Clearly established law "refers to the holdings, as opposed to the dicta, of [the Supreme Court's]

decisions as of the time of the relevant state-court decision."  Williams, 529 U.S. at 412; see also

Carey v. Musladin, 549 U.S. 70, 74 (2006) ("federal habeas relief may be granted here if the

California Court of Appeal's decision was contrary to or involved an unreasonable application of

this Court's applicable holdings").  A court must look for "the governing legal principle or

principles set forth by the Supreme Court at the time the state court renders its decision."

Lockyer v. Andrade, 538 U.S. 63, 71, 72 (2003).

A decision is "contrary to" a Supreme Court holding within 28 U.S.C. § 2254(d)(1), if the

state court "contradicts the governing law set forth in [the Supreme Court's] cases" or if it

"confronts a set of facts that are materially indistinguishable from a decision of th[e Supreme]

Court and nevertheless arrives at a [different] result." Williams v. Taylor, 529 U.S. 362, 405-06

(2000).  Under the "'unreasonable application' clause of § 2254(d)(1), a federal habeas court may

grant the writ if the state court identifies the correct governing legal principle from th[e Supreme]

Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."

Williams, 529 U.S. at 413.  For example, in Carey v. Musladin, the court reversed the granting of

a writ, holding that where "[n]o holding of this Court required the California Court of Appeal to

11

apply the test of <u>Williams</u> and <u>Flynn</u> to the spectators' conduct . . . , the state court's decision was not contrary to or an unreasonable application of clearly established federal law." <u>Carey</u>, 549 U.S. at 77.[2]  In addition, whether a state court's application of federal law is "unreasonable" must be judged objectively; an application may be incorrect, but still not unreasonable.[3]  <u>Id</u>. at 409-10; <u>see also</u> <u>Thomas v. Varner</u>, 428 F.3d 491, 497 (3d Cir. 2005). "[T]his Court has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court."  <u>See</u> <u>Knowles v. Mirzayance</u>, 129 S. Ct. 1411, 1419 (2009).

### III.  DISCUSSION

A.  Post-Conviction Relief Delay

In Ground One, Petitioner asserts that he was denied a speedy resolution of his post-conviction relief petition (Part A) and that post-conviction relief counsel was constitutionally ineffective in failing to expedite the post-conviction proceeding (Part B).  As factual support, Petitioner alleges:

> Because petitioner filed his initial petition for Post-Conviction-Relief in a timely manner in September, 2002; again in August, 2004; and a third time in March, 2005, and the Trial Court has yet to hear his petition, there is an absence of available state corrective process, and circumstances exist that has deprived petitioner of his

---

[2] <u>See also</u> <u>Wright v. Van Patten</u>, 552 U.S. 120, __, 128 S. Ct. 743, 747 (2008) ("Because our cases give no clear answer to the question presented, let alone one in [petitioner's] favor, it cannot be said that the state court unreasonabl[y] appli[ed] clearly established Federal law.") (citation and internal quotation marks omitted).

[3] "[D]ecisions of federal courts below the level of the United States Supreme Court may be helpful to [a court] in ascertaining the reasonableness of state courts' application of clearly established United States Supreme Court precedent, as well as helpful amplifications of that precedent."  <u>Marshall v. Hendricks</u>, 307 F.3d 36, 71 n.24 (3d Cir. 2002) (citations and internal quotation marks omitted).

> rights.  Petitioner has diligently reached out to his appointed
> counsel of The Public Defenders Office, and the court on
> numerous occasions.  His Post-Conviction Appeal has still been
> "Inordinately Delayed."
>
> After a few attempts at filing his petition for Post-conviction-
> Relief, and after a few years of waiting for counsel to be appointed,
> in January, 2006, petitioner finally received assigned counsel.  In
> February, 2006, petitioner received a letter from his assigned
> counsel.  After consulting with her, petitioner was told that a
> hearing would soon be held on his new constitutional claims.  Over
> a span[] of more than 2 1/2 years, despite petitioner's numerous
> letters to counsel and the Office of the Public Defender, no hearing
> has been held, and PCR counsel has not been responsive.
> Petitioner's claims ha[ve] yet to be heard in the trial court, and to
> date petitioner is unaware as to the status of his case.

(Am. Pet., Ground One, Part A and Part B, Supporting Facts.)

First, the claim raised in Part B regarding the ineffectiveness of post-conviction relief counsel will be dismissed because the ineffective assistance of post-conviction relief counsel is not cognizable under § 2254.  See 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254.").

Second, the claim raised, pursuant to Part A, that Petitioner was denied a speedy resolution of his post-conviction relief petition, must also fail.  The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. CONST. amend. VI.  However, Respondents correctly argue that "the Sixth Amendment right of the accused to a speedy trial has no application beyond the confines of a formal criminal prosecution." Doggett v. United States, 505 U.S. 647, 655 (1992).  Although "Federal courts may upset a State's postconviction relief procedures . . . if they are fundamentally inadequate to vindicate the substantive rights provided," District Attorney's Office for Third Judicial Dist. v.

13

Osborne, 129 S. Ct. 2308, 2320 (2009), a state court's delay in considering a post-conviction

relief petition is not cognizable in a § 2254 proceeding.  See Mason v. Meyers, 208 F.3d 414, 417

(3d Cir. 2000); Hassine v. Zimmerman, 160 F.3d 941, 954-55 (3d Cir. 1998) ("the federal role in

reviewing an application for habeas corpus is limited to evaluating what occurred in the state or

federal proceedings that actually led to the petitioner's conviction; what occurred in the

petitioner's *collateral* proceeding does not enter into the habeas calculation"); Heiser v. Ryan, 15

F.3d 299, 307 (3d Cir. 1994).  Based on the foregoing, Petitioner is not entitled to habeas relief

under Ground One, Part A or B.

## B.  Prosecutorial Misconduct

In Ground Two, Petitioner argues that the prosecutor's comments in summation violated

his due process rights.  As factual support, he asserts:

> In her summation, the prosecutor committed misconduct by
> making ongoing statements to the jury in reference to a brown
> 1984 Chevy.  She also stated that "It was next to impossible" that
> the brown Chevy was not the automobile that fled the scene of a
> crime.  There is no indication in the record that the suspect's car
> was a 1984 model.  Secondly, the prosecutor bolstered the
> credibility of the police officers by stating, among other things,
> "He wasn't an overzealous police officer."  "He didn't pull his gun.
> He didn't attempt to shoot the perpetrator . . ."  An objection, soon
> after, was sustained for the defense.  However, the jury had already
> retrieved her convincing words, and subsequently returned a
> verdict in favor of the state.

(Am. Pet., Ground Two, Supporting Facts.)

Prosecutorial misconduct may "so infect[] the trial with unfairness as to make the

resulting conviction a denial of due process."  Donnelly v. DeChristoforo, 416 U.S. 637, 643

(1974).  Where "specific guarantees of the Bill of Rights are involved, [the Supreme] Court has

taken special care to assure that prosecutorial misconduct in no way impermissibly infringes

them." Id. at 642.  The quantum or weight of the evidence is crucial to determining whether the

prosecutor's statements before the jury were so prejudicial as to result in a denial of due process.

Darden v. Wainwright, 477 U.S. 168, 182 (1986); Donnelly, 416 U.S. at 644; Moore v. Morton,

355 F.3d 95, 111 (3d Cir. 2001).

Petitioner presented his prosecutorial misconduct claim to the Appellate Division on

direct appeal.  The Appellate Division rejected the claim as follows:

> [T]here was no prejudicial prosecutorial misconduct in the
> prosecutor's remarks during summation.  Her reference to
> Edwards' description of the big, old car was generally accurate
> although it varied in some particulars from Edwards' statement.
> There was no impropriety in the argument that defendant's driving
> a vehicle meeting that description was a strong indication of his
> guilt.  Nor did the prosecutor cross the bounds of propriety by
> suggesting that the police were frightened by defendant's threats,
> or her arguing that their actions were in all respects reasonable and
> responsible.

State v. Rogers, Docket No. A-5844-99T4 slip op. at 5.

The prosecutor's comments about the car were made in response to an argument raised by

the defense.  The trial court sustained defendant's objection to the comments about the police

officers.  Moreover, the prosecutor's comments did not infect the trial with unfairness as to make

the resulting conviction a denial of due process under Donnelly.  Thus, the New Jersey courts'

adjudication of Petitioner's prosecutorial misconduct claims was not contrary to, or an

unreasonable application of, Supreme Court precedent.  Petitioner is not entitled to habeas relief

under Ground Two.

C.  Sufficiency of Evidence

In Ground Three, Petitioner argues that the evidence was insufficient to convict him of

robbery.  As factual support, Petitioner asserts:

15

> Because the victim did not identify the petitioner as the robber, and
> because his description of the robber did not match the defendant,
> and because the victim did not know the type of car or the
> make/model, clearly the evidence presented was insufficient to find
> petitioner guilty of robbery.

(Am. Pet., Ground Three, Supporting Facts.)

A sufficiency of the evidence claim is governed by Jackson v. Virginia, 443 U.S. 307, 318 (1979).  In Jackson v. Virginia, the Supreme Court determined that, "in a challenge to a state criminal conviction brought under 28 U.S.C. § 2254 - if the settled procedural prerequisites for such a claim have otherwise been satisfied - the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt."  Id. at 324.  The Court instructed a federal habeas corpus court "faced with a record of historical facts that supports conflicting inferences [to] presume - even if it does not affirmatively appear in the record - that the trier of fact resolved any such conflicts in favor of the prosecution, and [to] defer to that resolution."  Id. at 326; see also House v. Bell, 547 U.S. 518, 538 (2006) ("When confronted with a challenge based on trial evidence, courts presume the jury resolved evidentiary disputes reasonably so long as sufficient evidence supports the verdict").  The Court emphasized that "the standard . . . does not permit a court to make its own subjective determination of guilt or innocence."  Jackson at 320, n.13. "[U]nder Jackson, the assessment of credibility of witnesses is generally beyond the scope of review."  Schlup v. Delo, 513 U.S. 298, 330 (1995).  The question is "whether, viewing the evidence in the light most favorable to the state, it was objectively unreasonable for the Appellate Division to conclude that a rational trier of fact could have found, beyond a reasonable doubt that [petitioner] was guilty[.]" Kamienski v. Hendricks, 2009 WL 1477235 (3d Cir. May 28, 2009).

16

Petitioner raised Ground Three on direct appeal.  However, the Appellate Division's summary of the facts demonstrates that a rational trier of fact could have found guilt beyond a reasonable doubt:

> There is no merit in the claim that the State failed to prove defendant was the perpetrator of the crimes against Edwards and that defendant was entitled to a dismissal of the charges.  There was substantial evidence which, if accepted by the jury, pointed to defendant and provided ample basis for a conclusion of guilt beyond a reasonable doubt.  Factors such as the failure to have Edwards identify defendant directly, or the discrepancy between Edwards's original statement that the robber was approximately five feet tall and the fact that defendant was five feet ten inches tall, were legitimate arguments to be made by defense counsel, but were no more than elements in the mix, pro and con, to be weighed by the jury in reaching its verdict.

State v. Rogers, Docket No. A-5844-99T4 slip op. at pp. 5-6.

Petitioner essentially argues that there was insufficient evidence to connect him to the robbery.  However, the jury found that Petitioner was the perpetrator, and Petitioner has not shown that the Appellate Division's rejection of Petitioner's sufficiency of the evidence claim was contrary to, or an unreasonable application of, Jackson v. Virginia.  Thus, Petitioner is not entitled to habeas relief on Ground Three.

D.  Flight Instruction

In Ground Four, Petitioner argues that the flight charge deprived him of due process.  As factual support, Petitioner asserts:

> Because there were three stages in the state's narrative where the jury could have found "flight" and because the judge didn't explain the defense position with sufficient clarity: that the petitioner only fle[]d from police officers on foot after witnessing a car chase, and that he solely ran to evade apprehension for outstanding municipalities, and because there must be circumstances present and unexplained which, in connection with the leaving, the "Flight

17

Charge" permitted the jury to make an undifferentiated inference of "consciousness of guilt," that resulted in a verdict for the state.

(Am. Pet., Ground Four, Supporting Facts.)

Petitioner raised Ground Four on direct appeal.  The Appellate Division summarily rejected the claim as follows: "The claim that the trial court erred in delivering a 'flight' charge has no merit and does not warrant further discussion in this opinion."  State v. Rogers, Docket No. A-5844-99T4 slip op. at 6.

A habeas petitioner who challenges state jury instructions must "point to a federal requirement that jury instructions on the elements of an offense . . . must include particular provisions," or demonstrate that the jury "instructions deprived him of a defense which federal law provided to him."  Johnson v. Rosemeyer, 117 F.3d 104, 110 (3d Cir. 1997).  This is because district courts do not "sit as super state supreme courts for the purpose of determining whether jury instructions were correct under state law with respect to the elements of an offense and defenses to it."  Id.  "Before a federal court may overturn a conviction resulting from a state trial in which this instruction was used, it must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment."  Cupp v. Naughten, 414 U.S. 141, 146 (1973).  As the Third Circuit explained,

> In considering whether this case involves a claim of error under the Constitution, laws, or treaties of the United States, it is critical to remember that the Supreme Court has made it clear that the states define the elements of state offenses. Accordingly, while there may be constitutionally required minimum criteria which must be met for conduct to constitute a state criminal offense, in general there is no constitutional reason why a state offense must include particular elements. See McMillan v. Pennsylvania, 477 U.S. 79, 84-86, 106 S.Ct. 2411, 2415-16, 91 L.Ed.2d 67 (1986).

18

It thus follows that for the error of state law in the justification instructions, assuming that there was an error, to be meaningful in this federal habeas corpus action, there would have to be a body of federal law justifying the use of deadly force which is applicable in a state criminal action charging an offense based on the defendant's use of that force. Then the error in the jury instructions would be significant if the instructions did not satisfy that body of law. Put in a different way, the jury instructions on justification, even if correct under state law, would need to have relieved the state of the necessity of proving an element of the offense as required by federal law or to have deprived the petitioner of a defense the state had to afford him under federal law in order to be significant in a federal habeas corpus action. If we concluded that a petitioner could obtain habeas corpus relief without making such a showing, then district courts in habeas corpus cases would sit as super state supreme courts for the purpose of determining whether jury instructions were correct understate law with respect to the elements of an offense and defenses to it.

Johnson, 117 F.3d at 110.

Petitioner is not entitled to habeas relief on Ground Four because he does not point to a federal requirement that jury instructions prohibit a flight charge where the defendant presents an alternative reason for flight, or require the judge to describe the defendant's alternative explanation for flight. See Johnson, 117 F.3d at 111. Moreover, "[i]t is well established that evidence of flight is admissible as a circumstance tending to show a consciousness of guilt." Allen v. Chandler, 555 F.3d 596, 599 (7th Cir. 2009); accord Ventura v. Attorney General, Fla., 419 F.3d 1269, 1290 (11th Cir. 2005) ("evidence of resistance to arrest and flight is admissible to demonstrate consciousness of guilt and thereby guilt") (citation and internal quotation marks omitted). Further, "the fact that the instruction was allegedly incorrect under state law is not a basis for habeas relief." Estelle, 502 U.S. at 71-72; see also Engle v. Isaac, 456 U.S. 107, 119 (1982) ("Insofar as respondents simply challenge the correctness of the self-defense instructions

19

under Ohio law, they allege no deprivation of federal rights and may not obtain habeas relief."). Moreover, Petitioner cites no Supreme Court authority for the proposition that the jury instructions violated a clearly established federal right, as determined by the Supreme Court. See Scherzer v. Ortiz, 111 F. App'x 78, 88 (3d Cir. 2004) (challenge to instruction on accomplice liability is question of state law that is not cognizable under § 2254). Petitioner is not entitled to habeas relief on Ground Four.

E.  Legality of Sentence

Petitioner challenges the legality of his sentence in Grounds Five, Six, and Nine.  In Ground Five, Petitioner asserts that the 22-year period of parole ineligibility, pursuant to the Graves Act, was unconstitutional because "the 'Graves Act' does not apply if the object involved is so seriously broken or incomplete that it can no longer be considered a real gun."  (Am. Pet., Ground Five.)  In Ground Six, Petitioner argues that the sentence is excessive because the trial court considered prior offenses and the need to protect the public, instead of focusing exclusively on the present crime.  In Ground Nine, Part A, Petitioner argues that his sentence is unconstitutional because it was increased based on judicial factfinding.  In Ground Nine, Part B, Petitioner maintains that his period of parole ineligibility is unconstitutional "because petitioner possessed a less dangerous - Inoperable Gun - than more violent offenders with deadly weapons, [yet] he received five years more time on his parole ineligibility term than criminals with like crimes."  (Pet. Ground Nine, Part B.)  Respondent argues that Grounds Five, Six and Nine, Part B, raise questions under state law that are not cognizable under § 2254, and that Ground Nine, Part A, fails on the merits.

The problem with Grounds Five and Six is that, absent a claim that the sentence constitutes cruel and unusual punishment prohibited by the Eighth Amendment or that it is arbitrary or otherwise in violation of due process, the legality and length of a sentence (including the period of parole ineligibility) are questions of state law over which this Court has no jurisdiction under § 2254.  See Chapman v. United States, 500 U.S. 453, 465 (1991) (under federal law, "the court may impose . . . whatever punishment is authorized by statute for [an] offense, so long as that penalty is not cruel and unusual, and so long as the penalty is not based on an arbitrary distinction that would violate the Due Process Clause of the Fifth Amendment"); see also Wainwright v. Goode, 464 U.S. 78 (1983).

Petitioner argues in Part B of Ground Nine that his sentence is disproportionate.  In Lockyer v. Andrade, 538 U.S. 63, 77 (2003), the Supreme Court determined that, because the gross disproportionality principle under the Eighth Amendment "reserves a constitutional violation for only the extraordinary case," in applying this principle for § 2254(d)(1) purposes, it is not an unreasonable application of clearly established Eighth Amendment law for the state court to affirm petitioner's sentence of two consecutive terms of 25 years to life for a "third strike" conviction.  As  Petitioner cites no Supreme Court precedent supporting his position or presenting a contrary view to Lockyer, he is not entitled to habeas relief on Part B of Ground Nine.

Because Grounds Five, Six and Nine, Part B, raise questions of state law over which this Court has no jurisdiction, Petitioner is not entitled to habeas relief on those grounds.

In Ground Nine, Part A, Petitioner contends that his sentence is unconstitutional "[b]ecause the trial court found a fact 'Protection of The Public" and increased petitioner's

21

sentence, and because this fact was not submitted to a jury and proved beyond a reasonable

doubt[.]" (Am. Pet., Ground Nine, Part A, Supporting Facts.)  This claim is based on Apprendi v.

New Jersey, 530 U.S. 466 (2000), and Blakely v. Washington, 542 U.S. 296 (2004).[4]  In

Apprendi, the Supreme Court determined that Apprendi had a constitutional right to have a jury,

rather than a judge, find bias, because the finding was necessary to support an enhanced sentence

under New Jersey's hate crimes law.  The Supreme Court reversed Apprendi's sentence pursuant

to the principle that, "under the Due Process Clause of the Fifth Amendment and the notice and

jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases

the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and

proven beyond a reasonable doubt." Apprendi, 530 U.S. at 476 (citation and internal quotation

marks omitted).

        In 2002, the Supreme Court held in Ring v. Arizona, 536 U.S. 584 (2002), that imposition

of the death penalty under Arizona law violated Apprendi because the trial judge determined the

presence or absence of aggravating factors required by Arizona law for imposition of the death

penalty.  See Ring, 536 U.S. at 602.

        On June 24, 2004, the Court determined in Blakely v. Washington, 542 U.S. 296 (2004),

that application of Washington's sentencing guidelines violated the defendant's rights under

Apprendi.  The Blakely Court declared that "the 'statutory maximum' for Apprendi purposes is

the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury*

*verdict or admitted by the defendant*." Blakely, 542 U.S. at 303 (emphasis in original) (citations

omitted).

───────────────

        [4] Application of Blakely to Petitioner's sentence is not retroactive because Petitioner's
appeal became final after the Supreme Court decided Blakely on June 24, 2004.

In this case, Petitioner presented his <u>Apprendi/Blakely</u> claim to the Appellate Division on direct appeal.  The Appellate Division rejected the claim on the ground that the jury (not the judge) determined the factual predicate required for imposition of a period of parole ineligibility under the Graves Act.  Specifically, the Appellate Division held:

> [I]n his supplemental brief, defendant claims that the Graves Act violates the holding of <u>Apprendi v. New Jersey</u> because - defendant claims - the statute assigns to the judge rather than the jury the task of finding the predicate acts for Graves Act sentencing and also permits the judge to make that determination by a preponderance of [the] evidence instead of requiring proof beyond a reasonable doubt.  However, whatever may be the case in some hypothetical situation that might at some time arise, those constitutional infirmities do not apply here.
>
> <u>N.J.S.A.</u> 2C:43-6c states that the Graves Act applies to one convicted of, among other offenses, armed robbery under <u>N.J.S.A.</u> 2C:15-1 if, "while in the course of committing or attempting to commit the crime, including the immediate flight therefrom, [he] used or was in possession of a firearm."  Here, the jury - not the judge - found defendant guilty beyond a reasonable doubt of armed robbery and also of two counts charging him with possession of a weapon, a firearm, contrary, respectively, to <u>N.J.S.A.</u> 2C:39-5c(1), and <u>N.J.S.A.</u> 2C:39-4a.  Thus, it was the jury - again, not the judge - which found the predicate facts that mandated application of the Graves Act.  <u>See</u> <u>State v. Perez</u>, <u>supra</u>, 348 N.J. Super. at 326. Unlike the fact pattern in <u>Apprendi</u>, there was no deprivation of due process by depriving defendant of his right to insist that a jury find the critical predicate facts and do so beyond a reasonable doubt.  That is precisely what the jury did here and that is all that is required.  Again, what may become an issue and what may be appropriate in some other situation, is something that need not be addressed now.  This court will not engage in an abstract discussion or finding respecting constitutional issues not presented in the case before it.

<u>State v. Rogers</u>, Docket No. A-5844-99T4 slip op. at pp. 9-10.

The New Jersey courts' adjudication of Petitioner's <u>Apprendi/Blakely</u> claim was not contrary to, or an unreasonable application of, Supreme Court precedent.  Habeas relief is not warranted under Ground Nine, Part A.

F.  Ineffective Assistance of Trial and Appellate Counsel

In Ground Seven, Petitioner raises an ineffective assistance of trial counsel claim, and in Ground Eight, he argues that appellate counsel was deficient.  The Sixth Amendment, applicable to states through the Due Process Clause of the Fourteenth Amendment, guarantees the accused the "right . . . to have the Assistance of Counsel for his defense."  U.S. Const. amend. VI.  The right to trial counsel is the right to the effective assistance of counsel, and counsel can deprive a defendant of the right by failing to render adequate legal assistance.  <u>See</u> <u>Strickland v. Washington</u>, 466 U.S. 668, 686 (1984).  A claim that counsel's assistance was so defective as to require reversal of a conviction has two components, both of which must be satisfied.  <u>See</u> <u>Strickland</u>, 466 U.S. at 687.  First, the defendant must "show that counsel's representation fell below an objective standard of reasonableness."  <u>Id</u>. at 687-88.  To meet this prong, a "convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."  <u>Id</u>. at 690.  The court must then determine whether, in light of all the circumstances at the time, the identified errors were so serious that they were outside the wide range of professionally competent assistance.  <u>Id</u>. To satisfy the prejudice prong, the defendant must show that "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." <u>Id</u>. at 695.

The Fourteenth Amendment guarantees a criminal defendant pursuing a first appeal as of right certain "minimum safeguards necessary to make that appeal 'adequate and effective,'" Evitts v. Lucey, 469 U.S. 387, 392 (1985) (quoting Griffin v. Illinois, 351 U.S. 12, 20 (1956)), including the right to the effective assistance of counsel, Evitts at 396. The ineffective assistance of counsel standard of Strickland, 466 U.S. at 686, applies to a claim that appellate counsel was ineffective. See Smith v. Robbins, 528 U.S. 259, 285 (2000); United States v. Cross, 308 F.3d 308, 315 (3d Cir. 2002).

In Ground Seven, Petitioner argues that trial counsel was constitutionally ineffective in failing to move to suppress Edwards' identification of the air gun police saw Petitioner throw from the getaway car, as the air gun used in the robbery. Respondents correctly contend that counsel could not be constitutionally deficient in failing to move to suppress admission of the air gun, or Edwards' testimony identifying the air gun as the gun used in the robbery on this basis, because the identification of a gun is not governed by the constitutional limitations that apply to identification of a defendant. See State v. Delgado, 188 N.J. 48, 66 (2006) (rejecting defendant's argument that the standards of reliability for identification of persons be applied to identification of objects); Johnson v. Sublett, 63 F.3d 926, 932 (9th Cir. 1995) (holding there is no requirement for "car line-ups," and rejecting argument that "victim's in-court identification of the automobile which Johnson used to carry Jones out to the desert was tainted by unduly suggestive pretrial identification procedures"); Inge v. Procunier, 758 F.2d 1010, 1015 (4th Cir. 1985) ("the identification of a truck is not governed by the constitutional limitations that control the identification of a defendant").

25

Because counsel's failure to request a <u>Wade</u> hearing concerning identification of the gun was not deficient, Petitioner is not entitled to habeas relief on Ground Seven.

In Ground Eight, Petitioner asserts that appellate counsel was constitutionally ineffective in failing to challenge the following response by the trial judge to a note from the jury during deliberations asking if Petitioner was the owner of the car: "I'm not sure what relevance, if any, the owners of the vehicle may be in your deliberations.  And I do not want you to disclose any information about your deliberation process.  But the only evidence of ownership of the vehicle is contained in the tow sheet."  (Am. Pet., Ground Eight, Supporting Facts.)  Petitioner presented Ground Eight in his petition for post-conviction relief.  The trial judge rejected the claim as follows:

> Here the claim is that a response to the jurors' question about ownership of the vehicle he was found in was error.  His claim is that the Court's response instructed the jury that their question was not important . . . .  Although his argument is less than clear, Rogers appears to suggest that the fact that the car did not belong to him suggests something important.  But there never was an issue about Rogers being in the car when captured, and Rogers was never charged with possession of a stolen vehicle.  Moreover, the Court's statement that it did not know why the jury wanted to know did not suggest anything about its importance, one way or the other.
>
> In sum, Rogers has failed to demonstrate by a preponderance of the evidence that had appellate counsel raised the issues Petitioner now asserts, the result of the appeal would have been different . . . .  The record does not support or even give rise to a fair inference that counsel's performance was in any way inadequate or below a level of reasonable competence.  The impact of Roger's claims of error could not have had a prejudicial impact on the appeal's outcome.  Accordingly, this claim should also be rejected.

<u>State v. Rogers</u>, Ind. No. 99-09-2887 order at p. 9 (N.J. Super. Ct., Law Div., Aug. 11, 2006).

"[I]t is a well established principle that counsel decides which issues to pursue on appeal." Sistrunk v. Vaughn, 96 F.3d 666, 670 (3d Cir. 1996).  Appellate counsel is not constitutionally required to raise every nonfrivolous claim requested by the defendant.  See Jones v. Barnes, 463 U.S. 745, 751 (1983).[5]  Appellate counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." Smith v. Robbins, 528 U.S. 259, 288 (2000).  The New Jersey courts' rejection of the claim that appellate counsel was constitutionally deficient in failing to challenge the trial court's response to the jury's note was not contrary to, or an unreasonable application of Strickland and other Supreme Court precedent.  Accordingly, Petitioner is not entitled to habeas relief on Ground Eight.

I.  Certificate of Appealability

This Court denies a certificate of appealability because Petitioner has not made "a substantial showing of the denial of a constitutional right" under 28 U.S.C. § 2253(c)(2).  See Miller-El v. Cockrell, 537 U.S. 322 (2003).

**IV.  CONCLUSION**

Based on the foregoing, this Court shall dismiss the Petition and deny a certificate of appealability.

 S/Joseph A. Greenaway, Jr.
JOSEPH A. GREENAWAY, JR., U.S.D.J.

Dated:  October 26, 2009

---

[5] Deciding which issues to pursue on appeal requires an exercise of professional judgment.  Jones, 463 U.S. at 751; Sistrunk, 96 F.3d at 670.